JAMES K. SCHULER, Plaintiff-Appellee, *v.* HOWARD O. WALLACE and CHRISTINE A. WALLACE, his wife, Defendants-Appellants

NO. 5960

FEBRUARY 29, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

*Per Curiam.* This is an appeal from an order denying a motion to compel payment of the execution sale proceeds to

---

* Justices Kobayashi and Kidwell. who heard oral argument in this case. retired from the court on December 29. 1978. and February 28, 1979. respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case. if a vacancy arises or if for any other reason a justice is unable to continue on the case. the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

Appellants who prior to such sale were the owners. It seeks our interpretation of the language of the former HRS § 651-65, as it read before its repeal and the substitution of a new Chapter 651, part III, by Act 136, Sess. L. 1976.[1] Former § 651-65, in relevant part, read as follows:

§ 651-65 *Certain Real Property*. Real Property consisting of one piece of land not to exceed one acre, and the dwelling house and other buildings thereon situated, where the owner resides, shall be exempt from levy and sale on execution as follows:

(1) Such property of a value not exceeding $20,000 owned by any head of a family or any person sixty-five years of age or older;

(2) Such property of a value not exceeding $10,000 owned by any other person.

The values specified in this section shall be determined solely by the assessed value for taxation purposes. . . . We reverse.

For the purposes of this appeal, we assume that the following facts, set forth in affidavits filed by Appellants, were before the court: Appellants, husband and wife, were joint owners in fee simple of a residence property comprising less than one acre, which they occupied. At all relevant times, Appellant Howard O. Wallace was over the age of 65 years. Appellee obtained, in this action on a promissory note, a summary judgment against Appellants for the sum of $25,755.35. An execution was issued commanding the sheriff to levy upon the property of Appellants and to sell the same to satisfy the amount of the judgment and interest thereon, and thereupon to make return of the writ "with the proceeds by you collected." The sheriff's return of execution sets forth that the writ was executed on the residence property of Appellants by sale thereof at auction for $27,000, subject to liens and encumbrances and unpaid taxes, with expenses totalling $857.83, resulting in a deficiency of $255.36 in net amount

---

[1] The present section, which is equivalent to HRS § 651-65 after the enactment of Act 136, Sess. L. 1976, is HRS § 651-92 (1979 Supp.).

compared with the judgment and interest to date of the sale. Appellee acknowledges that he was the execution sale purchaser and contends that the sale was a "wash transaction" which resulted in no receipt of funds by the sheriff.

Appellants moved for a stay of the execution sale, "for equitable reasons to be shown at the hearing." The record does not disclose what reasons were advanced at the hearing of the motion, which apparently was granted orally, subject to a bond in the amount of $25,000 which Appellants did not provide, so that no stay was ordered. Although there is no transcript of the hearing on this motion, Appellee by memoranda filed in the circuit court acknowledged that Appellants' counsel asserted a right to claim an exemption. Appellants' counsel also called the sheriff's attention to the exemption claim of $20,000 at the time of the execution sale. No document asserting this claim to the exemption appears in the record prior to the motion to compel payment of the execution sale proceeds, filed subsequent to the sale.

The assessed value of the property for taxation purposes is not disclosed by the record. In Appellee's affidavit filed in the circuit court, it is averred that the maximum price at which the property could be sold in March, 1975, was $165,000, which after deduction of amounts due on prior encumbrances and expenses of sale would net Appellee only $15,000.

A preliminary question is whether there were execution sale proceeds for disposition by the circuit court. Appellee contends that there were no proceeds because of the offset of the bid against the judgment. This argument necessarily assumes that the proceeds of the sale have been applied against the judgment, a result which cannot occur until after the proceeds have been turned over to the court by the sheriff pursuant to the writ's command. If the property was conveyed by the sheriff to Appellee in return for a credit against the judgment, as the record implies, the sheriff remained accountable pursuant to his return and the proceeds were constructively in the hands of the court when it denied Appellants' motion. Appellee's right to accomplish payment of the execution sale price, pursuant to his successful bid, by offset

against the judgment was placed in issue by that motion. By its denial of the motion, the circuit court impliedly confirmed Appellee's right of offset.

Appellee contends that Appellants' exemption claim was not entitled to recognition because of lack of notice. We do not have before us a case of sale of exempt property in total ignorance of its character. Both Appellee and the sheriff were apprised of the possibility that Appellants might be entitled to claim an exemption, prior to the consummation of the execution sale. § 651-65 contained no provisions for notice or establishment of the exemption in order to preserve the rights of Appellants. The record, however, reveals that Appellee did receive actual notice of Appellants' claim of exemption under the statute in the sum of $20,000.00, prior to the execution sale. Whether the sale was effective to deprive Appellants of their ownership of exempt property is not before us, since Appellants claim only against the sale proceeds. We conclude that, even if notice of the exemption was required, enough was done to place Appellee and the sheriff upon inquiry and to preserve Appellants' claim to the sale proceeds. *Scofield v. Hopkins and Others*, 61 Wis. 370, 21 N.W. 259 (1884); *Paulson v. Hurlburt*, 93 Ore. 419, 183, P.937 (1919); *cf. Kaiser v. Pua*, 23 Haw. 584 (1917).

While the Appellants may have claimed, in the court below, an exemption of $20,000.00 for the husband and also a separate exemption of $10,000.00 for the wife, upon the contention that the execution was levied upon separate property interests in the joint property, the briefs filed in this Court by Appellants show clearly that they claimed just a single exemption of $20,000.00 for the husband only. Under such circumstances, we must construe that Appellants' claim of exemption must be limited to the single exemption and that they waived the $10,000.00 exemption that could have been claimed by the wife.[2] If Appellants recognized and were fully

---

[2] It is to be noted that under present § 651-92 (1979 Supp.) it is provided that not more than one exemption shall be claimed on any one parcel of real property even though more than one person residing on such real property may otherwise be entitled to an exemption.

aware of their exemption rights in the circuit court, and apparently they were, then their subsequent failure to mention and assert the wife's right to her claim of exemption in this Court would amount to a clear waiver. *Pence v. Price*, 211 N.C. 707, 192 S.E. 99 (1937); *cf. Kaiser v. Pua, supra*. In any event, nothing is presented to us which would suggest that Appellants' claim is for $30,000.00 exemptions. We thus proceed with the consideration of the contentions submitted to us by Appellants in their briefs and arguments.

Section 651-65 exempts "property of a value not exceeding" the amount of the applicable exemption. Appellee argues that this means that the property must have an assessed value not exceeding the exemption, and that no portion of a parcel of land which exceeds that value is exempt. Appellee acknowledges that this argument is supported by sparse authority and calls to our attention no helpful modern cases. We note that § 651-65 was amended in 1972 to establish the basic exemption of $10,000 for residence property owned by debtors who were neither heads of families nor over 65 years of age. In seeking the legislative intent, we cannot fail to be aware that $10,000 would rarely have been equal to the assessed value of residence property and that Appellee's interpretation would have excluded a large proportion of residence properties from the operation of the amended statute. Legal commentators have stated that even though these statutes might be considered to be in derogation of common law, courts as a whole have been extremely liberal in their construction in favor of the debtors. Comment, *State Homestead Exemption Laws*, 46 Yale L.J. 1023 (1937); *see also* Haskins, *Homestead Exemptions*, 63 Harv. L.Rev. 1289 (1950). We also note that the enactment of the new Chapter 651, part III, in 1976 as amended by Act 46, Sess. L. 1978, provides a procedure for appraisal and sale of exempt property which exceeds in value the amount of the exemption, with application of the proceeds to satisfy the exemption, although the "value not exceeding" phrase still appears. We conclude that § 651-65 must be read so as to preserve to Appellants the benefits of the exemption, notwithstanding that the assessed value in the property may have exceeded the applicable exemption. Since

a sale of the property has taken place and is not in question here, we have for consideration only the extent to which the exemption produces for Appellants interests in the sale proceeds.[3]

Chapter 651, part III, as it read at the times relevant to this appeal, contained no express provision for determining the interest of a judgment debtor in the proceeds of the sale of exempt property. This fact might have supported an argument in opposition to the sale in this case, but that question is not before us. The sale having taken place, the exemption may be considered to have been transferred to the proceeds of the property which were sold. The proceeds of the sale are therefore exempt from execution to the extent of the dollar amount of the applicable exemption determined on remand.

The last paragraph of the present §651-95 (1979 Supp.) directs that if the sale of real property is made, the proceeds "shall be applied in the following order of priority: first, to the defendant to the amount of the exemption; second, to the satisfaction of the execution costs, attorney's and appraiser's fees; and any other fees that may necessarily arise; third, to the satisfaction of the lien under which the sale is made; fourth, to the discharge of any subsequent liens and encumbrances according to their priority, and fifth, the balance, if any, to the defendant.'' While not so expressly provided by statute at the time of the execution sale in this case, we consider that this allocation of the sale proceeds most appropriately effectuates the legislative intent embodied in § 651-65 as it then read. Upon remand, the proceeds of the execution sale in this case should be applied in accordance with these priorities.

---

[3] Appellee urges upon us the inequity which he sees in being compelled to satisfy his obligation as the execution sale purchaser by a cash payment rather than by crediting the sale price against the judgment, a result which would effectively deprive Appellants of their exemptions. Appellee has not offered to rescind the sale and, in argument, opposed consideration of that method of resolving the difficulty in which Appellee finds himself as the execution sale purchaser. The record does not inform us whether Appellee remains the owner or has disposed of the property by resale.

Reversed and remanded for further proceedings consistent with this opinion.

*Alan Van Etten (Fong, Miho & Robinson* of counsel), for defendants-appellants.

*Robert W. Gibson* for plaintiff-appellee.