Mary J. PIETROWSKI, Plaintiff-Respondent,

v.

Richard G. DUFRANE and Laura K. Dufrane,
Defendants-Appellants.

Court of Appeals

*No. 00–2143. Submitted on briefs May 1, 2001.—Decided July 17, 2001.*

2001 WI App 175

(Also reported in 634 N.W.2d 109.)

On behalf of the defendants-appellants, the cause was submitted on the brief of *Michael P. Plum* of *Sayas, Schmuki & Plum, S.C.*, of Wauwatosa.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas W. Kurzynski* of *Literski, Rogaczewski & Kurzynski* of Greenfield.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Richard G. Dufrane and Laura K. Dufrane (the Dufranes) appeal from the circuit court's grant of su mmary judgment in favor of Mary J. Pietrowski on her cause of action to enforce a restrictive covenant which she claimed prohibited the Dufranes from constructing a detached, two-car garage on their property. The Dufranes argue that the circuit court erred in granting Pietrowski's motion for summary judgment because: (1) Pietrowski waived the right to enforce the restrictive covenant; (2) enforcing the restrictive covenant would result in inequity and injustice; and (3) violations of the restrictive covenant by others demonstrate a change in the character of the neighborhood and constitute an abandonment of the restrictive covenant. We are satisfied that the circuit court properly granted summary judgment in Pietrowski's favor and we affirm.

## I. BACKGROUND.

¶ 2. In May of 1998, the Dufranes purchased a parcel of real estate consisting of a single-family residence with an attached two-and-one-half car garage in the Brookdale subdivision located in Greenfield. Ap-

237

proximately three months later, the Dufranes procured a building permit for the construction of an additional 440–square-foot building on their property. Shortly thereafter, the Dufranes began constructing a detached two-and-one-half car garage on the southeast corner of their property, immediately adjacent to Pietrowski's property.

¶ 3. During the construction, Pietrowski informed the Dufranes multiple times that the garage violated the restrictive covenants contained in the Declaration of Restrictions executed in 1940 by the subdivision's original developer. The restrictions at issue prevent property owners in the subdivision from erecting more than one family dwelling and one private garage on their land. Pietrowski asserted that because the Dufranes already had a house and an attached garage on their property, the construction of an additional garage violated the restrictive covenants.

¶ 4. Once the construction was completed, Pietrowski initiated a cause of action seeking to enforce her equitable rights in the restrictive covenant and requesting that the circuit court order that the garage be razed. In their defense, the Dufranes alleged that other property owners in the subdivision, including Pietrowski, had constructed buildings on their property in addition to one single family residence and one garage. Based on this allegation, the Dufranes asserted two affirmative defenses to Pietrowski's claims: (1) that by violating the restrictive covenant herself, Pietrowski waived her equitable right to enforce the restrictive covenant; and (2) that the numerous other violations of the restrictive covenant demonstrated a change in the character of the neighborhood, indicating that the restrictive covenant had been abandoned. Both Pietrowski and the Dufranes filed motions for summary

judgment. Following a hearing, the circuit court denied the Dufranes' motion, granted Pietrowski's motion and ordered the Dufranes to raze the garage.[1]

## II. ANALYSIS.

¶ 5. The Dufranes argue that the trial court erred in granting summary judgment in favor of Pietrowski. Generally, our review of a circuit court's grant of summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). However, when the grant of summary judgment is based on an equitable right, as in this case, we apply a two-tiered standard of review. *Singer v. Jones*, 173 Wis. 2d 191, 194–95, 496 N.W.2d 156 (Ct. App. 1992). We review the legal issues *de novo*. *Id*. However, the circuit court's decision to grant equitable relief is discretionary and, therefore, will not be overturned absent an erroneous exercise of discretion. *Id*.

¶ 6. We are satisfied that the pleadings and evidentiary materials do not present any genuine issues of material fact. *See* WIS. STAT. § 802.08(2) (1999–2000). The relevant facts of this case are undisputed. Pietrowski and the Dufranes both own homes in the Brookdale subdivision located in Greenfield. Neither party disputes the existence nor the validity of the restrictive covenants which limit their properties' use. Neither party disputes the fact that numerous homeowners in the subdivision, including Pietrowski, have constructed sheds on their property in addition to a house and a garage. Finally, the Dufranes do not dispute the fact that the additional two-and-one-half

---

[1] The trial court stayed its order to raze the garage pending the outcome of this appeal.

car garage they constructed violated the restrictive covenant. The only dispute in this case is whether the circuit court erroneously exercised its discretion in granting Pietrowski's request for equitable relief.

¶ 7. In order to determine whether the circuit court properly exercised its discretion in granting equitable relief, we must first analyze the restrictive covenant. "The interpretation of a restrictive covenant is a question of law that we review independently of the trial court." *Zinda v. Krause*, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995). Because "public policy favors the free and unrestricted use of property," restrictions in deeds "must be strictly construed to favor unencumbered and free use of property." *Crowley v. Knapp*, 94 Wis. 2d 421, 434, 288 N.W.2d 815 (1980). "It is contrary to the public policy of this state to impose a restriction upon the use of land when that restriction is not imposed by express terms." *Id.* at 438.

¶ 8. Here, the Declaration of Restrictions clearly and expressly sets out the restrictive covenants. The restrictions applicable in the instant case provide:

> 1. All real estate located in said subdivision shall be restricted to one family dwelling houses and *upon which there shall be built no building other than a one family dwelling house and a private garage* for not more than three automobiles, said garage to be used in connection with the dwelling house placed upon said premises. . . .
>
> . . .
>
> 10. No building shall be built, erected or maintained on any parcel of land in said subdivision which shall have a width of the building line of less than 100 feet, and an

area of less than 10,000 square feet; *and not more than one building (excepting the private garage as hereinbefore defined), shall be built on said parcel of land.*

(Emphases added.) The restrictions clearly prohibit the construction of *any* building in addition to a single family dwelling house and a private garage. Therefore, the circuit court correctly found that the Pietrowski's shed, the Dufranes' garage, and the other sheds in the subdivision violated the Declaration of Restrictions in the Brookdale subdivision.

¶ 9. Nevertheless, despite the violations of the restrictive covenants committed by Pietrowski and several other homeowners in the subdivision, the circuit court granted Pietrowski's request for equitable relief and enforced the restrictions against the Dufranes. The Dufranes now argue that the circuit court erroneously exercised its discretion in granting equitable relief for three reasons. We shall address each in turn.

¶ 10. First, the Dufranes argue that Pietrowski waived the right to enforce the restrictive covenant because she failed to object to other restrictive covenant violations. Generally, a property owner does not waive the right to enforce a restrictive covenant if one does not act on violations that do not affect him or her. *Ward v. Prospect Manor Corp.*, 188 Wis. 534, 540, 206 N.W. 856 (1926). Therefore, although Pietrowski did not enforce the restrictive covenant against the other homeowners in the subdivision who constructed sheds in violation of the covenant, because these other violations did not affect her, she did not waive the right to enforce the restrictive covenant against the Dufranes. However, the Dufranes argue that this general exception to the waiver rule is inapplicable in the instant case because

241

Pietrowski herself violated the specific limitations of the restrictive covenant which she is now seeking to enforce. We disagree.

¶ 11. Although there are no cases addressing the issue as raised by the Dufranes, we find a specific proposition relied on by our supreme court in *Ward* to be particularly instructive. In that case, the court asserted: "It is well established that acquiescence in slight violations of a covenant does not deprive an individual lot owner of the right to enforce observance of more material restrictions." *Id.* at 542. There, the court, in discussing the enforceability of restrictive covenants, differentiated between "the remodeling of the house adjoining them on the south" and "the building of a four-flat building . . . on the property adjoining them on the north." *Id.* Although that case did not address the situation presented here where the plaintiff violated the restrictive covenant she now seeks to enforce; the case remains instructive because of the distinction drawn by the supreme court between "slight" violations and "material" violations. *See id.* at 543 ("Why then should he be obliged to permit one neighbor to indulge in an obnoxious violation of a restrictive covenant because he has permitted another neighbor to indulge in an immaterial violation thereof?").

■

¶ 12. The Dufranes assert that "the distinguishing factor in the present case is that the plaintiff has constructed a building on her property that is in violation of the restriction she seeks to enforce." We disagree and conclude that the distinguishing factor is that Pietrowski's violation, as well as the other violations in the neighborhood, were slight violations, whereas the Dufranes' violation was material (i.e., a major viola-

tion). We see a distinction between building a storage shed and building a garage large enough to store motor vehicles. Therefore, we reject the Dufranes' argument that Pietrowski waived her right to enforce the restrictive covenant.

■

¶ 13. Next, in a related argument, the Dufranes contend that the doctrine of unclean hands prevented the circuit court from granting Pietrowski an equitable remedy once Pietrowski had violated the restrictions. *See Zinda v. Krause,* 191 Wis. 2d 154, 174, 528 N.W.2d 55 (Ct. App. 1995) ("One of the fundamental tenets of equity is that a person seeking equitable relief must come to the court with clean hands."). The Dufranes also argue that enforcing the restrictive covenants will lead to unjust or inequitable results because Pietrowski would be allowed to maintain a violation of the restrictions on her property while enforcing the restrictions on her neighbors. *See Ward,* 188 Wis. at 537 (courts "will enforce [equitable rights] in the absence of facts and circumstances making such enforcement unjust of inequitable."). We reject these arguments based on the distinction drawn above. The violation of the restrictions committed by the Dufranes was a material breach of the covenant, given the size of the building they constructed and its potential use. Any violation of the restrictions committed by Pietrowski was technical or slight. Therefore, we are satisfied that Pietrowski's breach was not so great as to result in her having "unclean hands," and that enforcing the restrictive covenants against the Dufranes will not lead to an unjust or inequitable result. This is so because of the relative difference in the type of violations— enforcement against a major violation of the restrictive

covenant by a party who committed a minor violation does not result in an injustice.

¶ 14. Finally, the Dufranes argue that the numerous other violations of the restrictive covenant in the subdivision demonstrate a change in the character of the neighborhood, which constitutes an abandonment of the restrictive covenant. "Courts of equity will not enforce such restrictive covenants where the character of the neighborhood has so changed as to make it impossible to accomplish the purposes intended by such covenants." *Id.* at 544. "Such changed conditions may . . . result from a failure on the part of the property owners to observe or comply with the terms of the covenant." *Id.* The Dufranes argue that the combination of the proliferation of prohibited buildings throughout the neighborhood and the demise of the architectural control committee, which had been in charge of enforcing the restrictions, demonstrated an intent to abandon the restrictive covenant. We disagree.

¶ 15. The sheds constructed by Pietrowski and several other homeowners in the subdivision did not demonstrate a change in the character of the neighborhood which defeated the purpose of the restrictive covenants. Although the restrictive covenants do not explicitly set forth an overall purpose, nor did the trial court render any findings on the issue, it is possible to ascertain the restrictive covenants' purpose from their plain language. The Dufranes correctly argue that "[o]ne of the purposes of the restrictive covenant is to limit the number of buildings constructed on each lot." However, this is not the sole purpose. The language of the restrictions clearly place an emphasis on limiting

the use of the property to single family dwellings; thereby prohibiting both multiple family dwellings and businesses.

¶ 16. Given the limitation to single family dwellings and one garage, and the prohibition of multiple family dwellings and businesses, it was reasonable for the trial court to draw a distinction between slight violations of the restrictions, such as the sheds constructed by Pietrowski and the other homeowners, and a material violation such as the two and one-half car garage constructed by the Dufranes. The sheds could not be used, nor was there any evidence that they were being used, as a second dwelling or as a place of business contrary to the purpose of the restrictive covenants. However, based on the size of the building constructed by the Dufranes, it could have been used for such a purpose.[2] Therefore, we are satisfied that the sheds constructed by Pietrowski and the other homeowners did not defeat the purpose of the restrictive covenants by changing the character of the subdivision from a single family residential neighborhood. *See Vorpahl et al. v. Gossman et al.*, 24 Wis. 2d 232, 238, 128 N.W.2d 430 (1964) ("The change contemplated by this rule is qualitative, i.e., a shift from a residential area to commercial."). Further, we conclude that given the purpose of the restrictions it was reasonable for the circuit court to distinguish between the sheds constructed around the neighborhood, and the garage constructed by the Dufranes.

---

[2] We do note that the record indicates the Dufranes simply used the garage to store personal property.

¶ 17. Moreover, we reject the Dufranes' argument that the dissolution of the architectural control committee somehow contributes to the alleged changes in the character of the subdivision. The architectural control committee was created to ensure compliance with the restrictive covenants, but was terminated on January 1, 1965, by operation of the restrictions. Nothing in the deed's language suggested that the restrictive covenants were invalid when the architectural control committee was dissolved. Indeed, the greatest need for an architectural control committee was when the subdivision was first being developed. As the subdivision became older, with fewer houses being built, the architectural control committee was no longer necessary. Thus, the architectural control committee's dissolution does not demonstrate an intent to abandon the restrictions.

¶ 18. For all of the above stated reasons, we conclude that the circuit court properly exercised its discretion in granting Pietrowski's request for equitable relief and, accordingly, we affirm.

*By the Court.*—Order affirmed.